UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 1:19-cv-22278

ST. MARTINUS UNIVERSITY, N.V.,
A Curacao limited liability company

  Plaintiff,

v.

CARIBBEAN HEALTH HOLDING, LLC,
A Florida Limited Liability Company,
DEREK VAN WALLEGHEM, individually,
and JOHN VINCENT SCALIA

  Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

  Plaintiff, ST. MARTINUS UNIVERSITY, N.V., hereby sues the Defendants, CARIBBEAN HEALTH HOLDING, LLC, a Florida Limited Liability Company, and DEREK VAN WALLEGHEM and JOHN VINCENT SCALIA, individually (collectively "the Defendants"), and in support state as follows:

**JURISDICTION, PARTIES AND VENUE**

  1. This is an action for damages in excess of $75,000.00.

  2. Plaintiff, ST. MARTINUS UNIVERSITY, N.V ("SMU"), is a private limited liability company incorporated under the laws of Netherlands Antilles whose registered office is located at Kaya Fraternan di Skerpene #1, Scherpenheuvel Willemstad, Curacao.

  3. Defendant CARIBBEAN HEALTH HOLDING, LLC ("CHH") is a Florida limited liability company with its registered office located in Miami-Dade County at all times material.

  4. Defendant DEREK VAN WALLEGHEM ("WALLEGHEM") is and individual who is *sui juris* and, upon information and belief, a resident of Miami-Dade County.

5. Defendant JOHN VINCENT SCALIA ("SCALIA"), is and individual who is *sui juris* and, upon information and belief, a resident of the State of New York

6. SCALIA is subject to personal jurisdiction in the State of Florida because, among other things, SCALIA, at all times material, operated, conducted, engaged in and carried on a business or business venture in this state, had an office or agency in this state, committed tortious acts in this state, and caused injury to persons or property within this state while engaging in solicitation or service activities within this state.

7. At all times material to this lawsuit, SCALIA engaged in substantial and not isolated activity within the State of Florida.

8. Plaintiff reserves the right to amend the Complaint to additional defendants once discovery reveals all of the participants in the Defendants' scheme.

9. Venue is proper in Miami Dade County, Florida since the Defendants, at all times material, resided and/or had their principal places of business in and conducted business within Miami Dade County, Florida. Moreover, one or more of Plaintiff's causes of action in this case accrued in Miami-Dade County, and/or the Defendants have an agent or representative in Miami-Dade County.

## FACTS

### St. Martinus University and its Financial Hardship

10. SMU was founded in October 2000 as a private higher education institution to provide education and training in the medical and healthcare fields, and to provide research and services in such areas.

11. According to the Bylaws in effect as of 2005, SMU had issued and outstanding several classes of stock, in following manner: [1] 1,800,000 shares of common stock ("Shares C") valued at US$ 0.50 per share; [2] 300,000 cumulative variable preference convertible non-voting

shares ("Shares P") valued at US$ 1.00 per share; and [3] 200,000 Key Personnel shares valued at US$ 0.50 per share. The Bylaws of SMU are attached as Exhibit "A."

12. By 2007 SMU had fallen into financial difficulty and had incurred substantial sums of debt.

13. SMU's financial hardship at the time was due because of mismanagement of funds. At the time, Jayant Kumar Pritamdas Daryanani ("Daryanani), Roger Cortney ("Courtney"), SCALIA and WALLEGHEM held the occupation of the Supervisory Board of SMU and managed the affairs of the company.

14. On or about December 20, 2007, Defendants WALLEGHEM and SCALIA, together with the other members of SMU, purportedly entered into a Shareholders Agreement, attached hereto as Exhibit "B."

15. According to the Shareholders' Agreement, Defendants WALLEGHEM and SCALIA were purportedly shareholders of SMU with an interest of 5.54% and 21.18%, respectively, among others. *Id* at p.6.

16. The majority shareholder at the time was Global Health Education Partners Limited, an entity established in British territory of Anguilla, which was the holder of 60.88% of the issued and outstanding shares in the Company. *Id* at p. 2.

17. The Shareholder Agreement had been kept secret and undisclosed until about April 2019, after the culmination of a lawsuit involving SMU in Curacao.

18. Pursuant to the Shareholder's Agreement, the purpose of the document was to memorialize the then existing Shareholder's intent to sell and transfer 100% of their shares in the company to the Manipal Education Group for $4.5 million dollars, and settlement of all liabilities of the Company and several outstanding issues among the shareholders. *Id* at 2. The sale to the proposed buyer fell through and was never consummated.

19. Of particular importance, the Shareholder's Agreement specifically states that all liabilities of SMU would be liquidated from the proceeds of the sale before any distribution was to be made to the Shareholders, and listed what the Shareholder's recognized as all outstanding debt owed by SMU at the time. The Shareholder's Agreement also stated that any liabilities that were to be incurred on behalf of SMU after January 1, 2008, were to be borne by the Shareholders mutually, and thus not under the name of the university. *Id* at 2-3.

20. Moreover, sometime in 2001 SMU obtained a substantial loan from Banco di Caribe in Curacao, which was refinanced in 2005. The terms of the loan expressly prohibited inquiring additional issuance of any other obligation or loan without the expressed written consent of the lender.

### The Personal Loans from SCALIA and WALLEGHEM

21. During the period of December 13, 2007 through February 14, 2008, SCALIA and WALLEGHEM, through certain promissory notes, purportedly made personal loans to SMU (the "Promissory Notes"), totaling approximately $180,000.00. *See* copies of the Promissory Notes attached hereto as Exhibit "C."

22. None of the purported Promissory Notes were disclosed in the Shareholder's Agreement whereby the Shareholders of SMU disclosed all liabilities SMU had outstanding and that would be liquidated from the sale of the shares to the Manipal Education Group. *See* Exhibit "B."

23. Moreover, with the exception of one of the promissory notes, all Promissory Notes are dated post the execution of the Shareholder's Agreement entered yet were made to account of SMU. The Shareholder's Agreement specifically states that all loans post the date of executing said Shareholder's Agreement was the collective and individual responsibility of the Shareholders; i.e. not SMU.

24. The issuances of the Promissory Notes were in violation of SMU's articles of incorporations, as they were not issued under the proper authority or required consent.

25. Upon information and belief, the purported Promissory Notes were also obtained in violation with the terms and agreement of the loan SMU had obtained with Banco di Caribe, in that the bank was not asked or provided consent to the additional loan obligations.

26. On or about September 29, 2009, SCALIA and WALLEGHEM registered CHH, to which both individuals are the owners and managers.

27. Upon information and belief, sometime prior to October 2010, CHH acquired a 34.74% interest in SMU.

28. To date, CHH, SCALIA and WALLEGHEM have failed to disclose or demonstrate how and for what value it acquired its claimed interest in SMU.

29. Upon information and belief, and unbeknownst to Plaintiff, at some time after July 22, 2015, the Promissory Notes attached as Exhibit "C" were assigned by SCALIA and WALLEGHEM to CHH.

30. After CHH's purported acquisition of its interest in SMU, on or about October 2010, an entity by the name of International Healthcare Holding, LLC ("IHH"), a private limited liability company registered under the laws of Curacao, acquired 51% of GHEP's interest in SMU and 5% interest of CHH's purported interest in SMU. IHH paid $450,000.00 for the acquisition of its 56% interest.

31. On or about October 18, 2013, after IHH's acquisition of its interest in SMU, SCALIA and WALLEGHEM (not CHH) made general demand, for the first time, for immediate repayment of certain loans. Up to that date, such unspecified loans were not disclosed to IHH, and in such communication, SCALIA and WALLEGHEM made general demand of a purported total loaned amount owed to them and referenced a Shareholder Agreement executed in October 21, 2010.

In fact, during its due diligence period in 2010, neither SCALIA WALLEGHEM nor CHH (which was allegedly a shareholder at the time) disclosed to IHH the existence of the Promissory Notes or any such other loans owed to SCALIA or WALLEGHEM as claimed in October 18, 2013.

32.     Despite multiple demands from SMU of proper documentation showing that the loaned amounts demanded in October 18, 2013 were indeed valid obligations of the institution and that the loaned proceeds were actually tendered to the university, CHH could not or refused to provide any.

33.     Moreover, on or about February 2014, SMU hired an accountant to prepare financial statements for the year of 2012.  However, such financial statements could not be completed because the accounting firm could obtain records from SCALIA and WALLEGHEM, or anyone on their behalf, to substantiate any loans or obligations due to them by SMU.  As a result, SMU could not recognize any loans, or had any knowledge of the Promissory Notes to be later claimed by CHH.

34.     In response, CHH sought collection of the Promissory Notes in the jurisdiction of Curacao (the "Curacao Case"), and for the first time, on or about July 22, 2015, produced record of the purported Promissory Notes. *See* Exhibit "C."  Unlike the American judicial system, the courts of that jurisdiction barely allow for any discovery in defense of a civil matter. Accordingly, upon presentation, for the first time, of the purported promissory notes and certain photocopies of checks written to "St. Martinus University" but deposited into a bank account controlled by SCALIA (i.e. not SMU's bank account), the Court in Curacao entered a judgment against SMU for the amount requested by Defendants.  To date the judgment and damages suffered by Plaintiff have amounted to approximately one million dollars.

35.     To date, neither of the Defendants have yet to provide any proof that the loaned amounts were actually disbursed to SMU and were used to the benefit of the university, or any sort of accounting of how those funds were allocated.

6

**Student Loans and the Embezzlement of University Funds**

36. As part of its funding, SMU students would qualify for loan programs such as Nelnet and Sallie Mae.

37. According to the terms of the different loan programs, SMU was to use the proceeds from the student loans disbursed to it (the "Student Loans") for purposes such as tuition and educational fees, living expenses of students, and expenses associated with the clinical programs run by the university.

38. Sometime during the management of the university by SCALIA, WALLEGHEM, Daryanani, and/or Cortney, the directors registered certain limited liability companies in the States of New York and Virginia, by the names of SMU LLC New York and SMU LLC Virginia, for the purposes of facilitating the deposits of the Student Loans and redirecting the funds to and from the university in Curacao (i.e. SMU) for their intended educational expenses. However, at all times material, neither entity was registered to, owned by, or had any relation to SMU in Curacao.

39. Upon information and belief, at all times material, SMU LLC New York was registered and solely owned by SCALIA, and SCALIA controlled the bank account associated with that entity.

40. On or about December 12, 2007, Courtney, at the direction of SCALIA, issued a wire transfer of $177,000.00 of Student Loans from SMU LLC Virginia to SMU LLC New York's account under the control of SCALIA, of Student Loans paid to SMU by Nelnet. Upon information and belief, SCALIA ordered the transfer under the guise of having authority to preserve the funds of SMU to avoid a potential mismanagement of funds by Daryanani, which was suspected at the time. The funds, however, were to be used for tuition due to SMU in Curacao, cover clinical rotation expenses, and student living expenses as part of their loan with Nelnet. Accordingly, SMU LLC New York was supposed to make the funds available to SMU in Curacao.

7

41. By September 10, 2015, Courtney had learned that the funds were not made available to SMU in Curacao for their intended purposes, as per SMU's agreement with Nelnet, or otherwise provided to SMU.

42. As of the date of this filing, it has been unascertained whether the funds were ever released by SCALIA to SMU or used for SMU's legitimate purposes. An accounting has not been provided by SCALIA or SMU LLC New York to that effect.

**CHH's Claim of Ownership Interest in SMU**

43. As of December 20, 2007, pursuant to the Shareholder's Agreement, Defendants WALLEGHEM and SCALIA, together with the other members of SMU, purportedly entered into a Shareholders Agreement, attached hereto as Exhibit "B." This Shareholder's Agreement was not disclosed until about April 2019, after the culmination of the Curacao Case.

44. According to the Shareholders' Agreement, the majority shareholder at the time was GHEP, which was the holder of 60.88% of the issued and outstanding shares in the Company. *Id* at p. 2.

45. Among other, Defendants WALLEGHEM and SCALIA, as minority shareholders, purportedly held an interest of 5.54% and 21.18%, respectively. *Id* at p.6.

46. Pursuant to the Shareholder's Agreement, the purpose of the document was to memorialize the then existing Shareholder's intent to sell and transfer 100% of their shares in the company to the Manipal Education Group for $4.5 million dollars, and settlement of all liabilities of the Company and several outstanding issues among the shareholders. *Id* at 2. The sale to the proposed buyer fell through and was never consummated.

47. Thereafter, pursuant to a Share Purchase Agreement executed on or about March 27, 2008, the following minority shareholders sold their interest in SMU to the Maple Leaf Education Fund, Ltd., a Canadian corporation for a total of 664,055 shares:

| Shareholder | Shares | Percentage |
|---|---|---|
| SCALIA | 414,039 | 21.18% |
| WALLEGHEM | 108,306 | 5.54% |
| T. James Butler | 54,000 | 2.76% |
| Anthony Gigliotti | 22,710 | 1.16% |
| Louis Gigliotti | 6,000 | 0.31% |
| Rosemary Smith Vincent | 28,000 | 1.43% |
| Margaret Mary Saez | 25,000 | 1.28% |
| Mildred Pyne | 6,000 | 0.31% |

*See* the Share Purchase Agreement attached as Exhibit "D."

48.     As part of the Share Purchase Agreement, the Maple Leaf Education Fund, Ltd. also settled and satisfied SMU's existing obligations, including two liabilities asserted by SCALIA and WALLEGHEM for $230,000.00 and $80,000.00 respectively.

49.     Thereafter, on or about October 5, 2010, SCALIA, WALLEGHEM, T. James Butler, Anthony Gigliotti, Louis Gigliotti, and Mildred Pyne, purport to transfer their same interest they had transferred the Maple Leaf Education Fund, to CHH.

50.     To date, no documentation exists to support the transfer of interest from the Maple Leaf Education Fund back to the individual shareholders in paragraph 48 above, prior to their purported to CHH.

51.     Moreover, despite repeated requests, no documentation exist to demonstrate that CHH paid value for the 31.26% interest in SMU it claims to hold.

52.     After CHH's purported acquisition of its interest in SMU, on or about October 2010, IHH acquired 51% of GHEP's interest in SMU and 5% interest of CHH's purported interest in SMU.

IHH paid $450,000.00 for the acquisition of its 56% interest; except that it has not yet paid CHH for its purported interest as it is not clear who the owner for shares is.

## COUNT I – DECLARATORY RELIEF

53. Plaintiff re-alleges Paragraphs 1 through 51 as if fully set forth herein.

54. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201-2202, the Declaratory Judgments Act.

55. CHH presently claims to hold an interest of approximately 31.26%.

56. CHH's interest in SMU mainly came from its purported acquisition of interest formerly held by minority shareholders of SMU.

57. Prior to transferring their interest to CHH, the same minority shareholders had sold and transferred their interest to the Maple Leaf Education Fund, Ltd.

58. According to the limited documentation evidencing the transfer of shares, there is a question as to whether the individual shareholders that purportedly transferred their interest to CHH held any interest in SMU at the time of said transfer, or whether they had any authority to effectively transfer the shares in question.

59. Plaintiff accordingly requests a declaration of its rights and obligations as to CHH and/or the Maple Leaf Education Fund, Ltd., as the rightful holder of the interest in question.

60. Specifically, Plaintiff respectfully requests this Honorable Court whether CHH or the Maple Leaf Education Fund, Ltd. is the holder of 31.26% interest in SMU.

WHEREFORE, ST. MARTINUS UNIVERSITY, N.V., hereby respectfully requests a declaratory judgment against Defendant CARIBBEAN HEALTH HOLDING, LLC, DEREK VAN WALLEGHEM and JOHN VINCENT SCALIA consistent with the allegations and prayers for relief set forth herein.

## COUNT II – BREACH OF DUTY
### *(usurpation of corporate opportunity and self-dealing against All Defendants)*

61. Plaintiff re-alleges Paragraphs 1 through 51 as if fully set forth herein.

62. By virtue of Defendants position as members or shareholders, directors, and/or officers of SMU, Defendant owed SMU and its members/shareholders a fiduciary duty of care and loyalty and other duties under common law principles of law and equity relating to fiduciary duties.

63. As fiduciaries, Defendants had a duty to act in good faith, in a manner consistent with the best interests of SMU, including refraining from acquiring or exercising opportunities for their own personal benefit.

64. SMU did not receive just compensation from certain Student Loan proceeds issued in favor of the University for certain students.

65. Upon information and belief, Defendants created a scheme of shell companies, including but not limited to SMU LLC New York and SMU LLC Virginia in their own name and control, falsely representing that they were subsidiaries or affiliate companies of the university, in order to be able to divert Student Loan funds paid to the benefit of the university and other substantial business opportunities.

66. By diverting various valuable assets and business opportunities from SMU, Defendants breached their fiduciary duty of care and loyalty owed to SMU.

67. The fiduciary duty violations by the Defendants have been intentional, malicious, willful, knowing and/or reckless, through which acts they directly or indirectly derived an improper personal benefit.

68. Accordingly, Defendants have intentionally failed to uphold the fiduciary duties of honesty, loyalty, good faith, and care that an ordinary person would exercise under the same and similar circumstances, or in a manner reasonably believed to be proper with regard to Plaintiff SMU.

69. As a direct and proximate result of Defendants' actions, Plaintiff SMU has lost valuable assets and business opportunities and, therefore, has been damaged by Defendant's actions. Moreover, Plaintiff has suffered serious damage, including but not limited to being purged of valuable assets and business opportunities for grossly insufficient consideration.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against the Defendants, jointly and severally, together with an award of costs, prejudgment interests, the right to bring a claim for punitive damages and reasonable attorney's fees and costs, and such other relief that the Court deems proper.

### COUNT III - BREACH OF FIDUCIARY DUTY
*(Against SCALIA and WALLEGHEM for corporate waste and mismanagement)*

70. Plaintiff re-alleges Paragraphs 1 through 51 as if fully set forth herein.

71. As a result of the improper conduct described herein, including but not limited to diverting corporate funds of SMU to unrelated entities in the names of only SCALIA and WALLEGHEM, and by failing to properly consider the interests of the SMU and its shareholders and by refusing to conduct proper supervision, Defendants have caused and will continue to cause Plaintiff to waste valuable corporate assets and incur substantial expenses to defend Defendants' unlawful actions.

72. As a result of the waste of corporate assets, Defendants are liable to the Plaintiff.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against the Defendants, jointly and severally, prejudgment interests, the right to bring a claim for punitive damages and reasonable attorney's fees and costs, and such other relief that the Court deems proper.

### COUNT IV – CONVERSION
*(Against SCALIA and WALLEGHEM)*

73. Plaintiff re-alleges Paragraphs 1 through 51 as if fully set forth herein.

74. As described herein, SCALIA and WALLEGHEM transferred or caused the transfer of certain, specific funds due SMU from Student Loans derived from its program with Nelnet, to themselves or entities under their exclusive ownership and control, or for their own personal benefit and purpose.

75. In transferring valuable assets and business opportunities of SMU to themselves or other companies owned by Defendants for zero or grossly insufficient consideration, Defendants have unlawfully converted those assets and business opportunities for their own personal benefit, at the expense of SMU.

76. As a result of such improper transfers, SMU has and continues to be damaged and has been wrongfully denied of those assets and business opportunities.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against the Defendants jointly and severally, prejudgment interests, and the right to bring a claim for punitive damages and reasonable attorney's fees and costs, and such other relief that the Court deems proper.

## **COUNT V - UNJUST ENRICHMENT**
(*Against All defendants*)

77. Plaintiff re-alleges Paragraphs 1 through 51 as it fully set forth herein.

78. At all times material, the Defendants were unjustly conferred a benefit through the receipt of funds and/or business opportunities that belonged to SMU, including but not limited to Student Loan Funds that were retained by SCALIA and WALLEGHEM, or their entities, and proceeds resulting from an improper judgment obtained in the Curacao Case for the illegitimate purported Promissory Notes.

79. At all times material, the Defendants knowingly accepted a benefit from SMU or due to SMU under the guise of acting on behalf or under authority of the university.

80. The Defendants collectively have become unjustly enriched to the material detriment of S M U .

81. It would be inequitable for the Defendants to retain the benefit of those funds that rightfully belong to SMU.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against the Defendants, jointly and severally, together with an award of prejudgment interests, and such other relief that the Court deems proper.

## COUNT VI – FRAUD
### (*Against All Defendants*)

82. Plaintiff re-alleges Paragraph 1 through 51 as if fully set forth herein.

83. On or about December 12, 2007, Courtney, at the direction of SCALIA, issued a wire transfer of $177,000.00 from SMU LLC Virginia to SMU LLC New York's account under the control of SCALIA, of student loan proceeds paid to SMU by Nelnet.

84. Upon information and belief, SCALIA ordered the transfer under the guise of having authority to preserve the funds of SMU to avoid a potential mismanagement of funds by Daryanani, which was suspected at the time. The funds, however, were to be used for tuition due to SMU in Curacao, cover clinical rotation expenses, and student living expenses as part of their loan with Nelnet. Accordingly, SMU LLC New York was supposed to make the funds available to SMU in Curacao.

85. By September 10, 2015, Courtney had learned that the funds were not made available to SMU in Curacao for their intended purposes, as per SMU's agreement with Nelnet, or otherwise provided to SMU.

86. As of the date of this filing, it has been unascertained whether the funds were ever released by SCALIA to SMU or used for SMU's legitimate purposes. An accounting has not been provided by SCALIA, WALLEGHEM or SMU LLC New York to that effect.

87. Since about December 12, 2007 until the present Defendants misappropriated at least $177,000.00 from the Plaintiff for their own use and benefit. At all times material, defendants

misrepresented to Plaintiffs that the funds being received by the Defendants would be used for SMU's benefit.

88. Moreover, Defendants, individually or jointly, then generated illegitimate Promissory Notes, in violations of the Shareholders' Agreement they were a party to, as described above, to further cover their personal use of the Student Loans, and further defrauded the university by seeking to enforce the purported Promissory Notes and obtaining a money judgment against the university.

89. Defendants embezzled said funds and lied to conceal the existence and whereabouts of said funds with the intent to defraud the university, and kept SMU from uncovering truth of said funds until recently. Defendants actions were willful, wanton, intentional and outrageous.

90. In addition, Defendants defrauded the university by creating scheme, as described above, whereby they issued certain shares of SMU to CHH that SCALIA and WALLEGHEM did not hold at the time.

91. As the direct and proximate result of the Defendants' fraud, Plaintiffs have been and continue to be materially damaged.

WHEREFORE, Plaintiff demand final judgment for damages against the Defendants, jointly and severally, prejudgment interests, and the right to bring a claim for punitive damages and reasonable attorney's fees and costs, and such other relief that the Court deems proper.

## COUNT VII - CONSPIRACY TO COMMIT FRAUD
**(*Against All Defendants*)**

92. Plaintiff re-alleges paragraphs 1 through 51, and 82-91, as if fully set forth herein.

93. From December 12, 2007 until the present, Defendants have engaged in a common enterprise, as described above, to defraud the Plaintiff. Specifically, the Defendants collectively conspired to obtain monies that belonged to the Plaintiffs to then embezzle said funds for their own use and benefit.

94. The Defendants then created an elaborate scheme to generate illegitimate obligations

due to them by SMU, to cover the funds misused by them.

  95. The actions of Defendants were effectuated to intentionally defraud Plaintiffs of their funds.

  WHEREFORE, Plaintiff demand final judgment for damages against the Defendants, jointly and severally, prejudgment interests, and the right to bring a claim for punitive damages and reasonable attorney's fees and costs, and such other relief that the Court deems proper.

## COUNT VIII - FLORIDA CRIMINAL PRACTICES ACTS
### (*Against All Defendants*)

  96. Plaintiff re-alleges paragraphs 1 through 51, and 82-91, as if fully set forth herein.

  97. This is an action pursuant to Fla. Stat. § 772.104.

  98. The Defendants conspired with each other to defraud and fraudulently divest Plaintiff from its funds.

  99. The Defendants made material misrepresentations as to the preservation of SMU's funds and funds due Defendants by SMU (as set forth above), with the criminal intent to commit fraud by embezzling or misappropriating the Student Loans for their own personal use or benefit, or that of their entities, and then to conceal the truth by creating an elaborate scheme whereby SCALIA and WALLEGHEM generated illegitimate Promissory Notes to portray as if SMU owed them money.

  100. Defendants took part in this pattern of criminal activity and each defendant, directly or indirectly, received proceeds from this scheme.

  101. The direct and proximate result of the Defendants' criminal practices caused damage to Plaintiff which are continuing and ongoing.

  WHEREFORE, Plaintiff respectfully requests the Court enters a final judgment in favor of Plaintiff and against the Defendants, for violating the Florida Criminal Practices Act, in an amount equal to threefold of the actual damages sustained, or in the alternative, an amount of damages to be

determined by a jury, together with an award of attorney's fees, costs and such further relief this Court deems just and equitable.

## **COUNT IX – EMBEZZLEMENT**

102. Plaintiff re-alleges paragraphs 1 through 51 as if fully set forth herein.

103. By virtue of SCALIA and WALLEGHEM's position as members or shareholders, directors, and/or officers of SMU, SCALIA and WALLEGHEM owed SMU and its members/shareholders a fiduciary duty of care and loyalty and other duties under common law principles of law and equity relating to fiduciary duties. Specifically, SMU entrusted SCALIA and WALLEGHEM to make decisions, preserve and disburse its funds proceeding from Student Loans.

104. As fiduciaries, SCALIA and WALLEGHEM had a duty to act in good faith, in a manner consistent with the best interests of SMU, including refraining from acquiring or exercising opportunities for their own personal benefit.

105. SCALIA and WALLEGHEM actually have acquired the property of SMU through their financial and fiduciary relationship with SMU, and then transferred possession of SMU funds to themselves or a third party under their control.

106. Defendants actions were willful, wanton, intentional and outrageous, and as a result the Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff demand final judgment for damages against the Defendants, jointly and severally, prejudgment interests, and the right to bring a claim for punitive damages and reasonable attorney's fees and costs, and such other relief that the Court deems proper.

## **COUNT X - CIVIL THEFT**

107. Plaintiff hereby reserve the right to file a count for civil theft, and together with this complaint have served a thirty-day Civil Theft notice upon the Defendants.

## ADDITIONAL COUNTS

108. Plaintiff reserves the right to plead additional causes of action as they become known since discovery is ongoing.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable as of right.

Dated: June 4, 2019

Respectfully submitted,

*/s/Moises A. Saltiel* .
**Moises Alejandro Saltiel, Esq.**
Florida Bar Number: 0109954
Leon & Saltiel, PLLC
Attorneys for the Plaintiff
2 Alhambra Plaza, Suite 620
Coral Gables, Florida 33134
Phone: 305-384-3386
Fax: 786-332-6225
Email(s): Moises @LeonSaltielLaw.com
Service@LeonSaltielLaw.com